3033987-CMC/CPG/ASM                                      ARDC#6299806

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| DEVON BANK as the Guardian of the Estate of ALAYNA HIKE, a minor, and RHONDA JONES, Individually,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA and VHS WEST SUBURBAN MEDICAL CENTER, INC. d/b/a WEST SUBURBAN MEDICAL CENTER,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  NO:   17-cv-09286<br>)<br>)<br>)<br>)<br>)<br>) |

### WEST SUBURBAN MEDICAL CENTER'S ANSWER TO
### PLAINTIFFS' COMPLAINT FOR DAMAGES

NOW COMES the Defendant, VHS WEST SUBURBAN MEDICAL CENTER, INC. d/b/a

WEST SUBURBAN MEDICAL CENTER, by and through their attorneys, SMITHAMUNDSEN LLC

and for their answer to Plaintiffs' Complaint for Damages, state as follows:

### GENERAL ALLEGATIONS

1.      The PLAINTIFF, RHONDA JONES (hereinafter "Plaintiff JONES" or "RHONDA JONES"), is the natural mother of the minor, ALAYNA HIKE (hereinafter "Baby ALAYNA" or "ALAYNA HIKE") (collectively referred to as "PLAINTIFFS").

**ANSWER:**      **Defendant, WEST SUBURBAN, admits the allegations contained in Paragraph 1 of Plaintiff's Complaint at Law.**

2.      At all times pertinent herein, Plaintiff JONES and Baby ALAYNA were residents of the State of Illinois, County of Cook and lived within the Northern District of Illinois (District).

**ANSWER:**      **Defendant, WEST SUBURBAN, admits that Rhonda Jones's medical records reflect that she lived at 3912 West Jackson Blvd., Chicago, IL 60624.**

3.      In various places throughout the medical records, ALAYNA HIKE is referenced by many other names, including the following: "Alayna Jones", "Elaine Jones", "Elaine Hike", "Elaina Jones", "Elaina Hike", "Aalayna Jones" and/or "Aalayna Hike".

1

**ANSWER**:     **Defendant, WEST SUBURBAN, admits only that Rhonda Jones's medical records reference an Alayna Hike. Answering further, this Defendant has insufficient knowledge to admit or deny the remaining allegations contained in Paragraph 3 of Plaintiff's Complaint at Law.**

4.     DEVON BANK was appointed "Guardian of the Estate of ALAYNA HIKE" in the Circuit Court of Cook County — Probate Division on April 14, 2017 (Case No.: 2017 0 2006).

**ANSWER**:     **Defendant, WEST SUBURBAN, has insufficient knowledge to admit or deny the allegations contained in Paragraph 4 of Plaintiff's Complaint at Law.**

5.     Defendant UNITED STATES OF AMERICA (hereinafter referred to as Defendant USA) is named as a Defendant pursuant to the requirements of the Federal Tort Claims Act (FTCA) 2R U.S.C. § 2671.

**ANSWER**:     **Defendant, WEST SUBURBAN, admits the allegations contained in Paragraph 5 of Plaintiff's Complaint at Law.**

6.     At all times pertinent herein including but not limited to on and before December 1-2, 2016, the defendant, VHS WEST SUBURBAN MEDICAL CENTER, INC. d/b/a WEST SUBURBAN MEDICAL CENTER (hereinafter Defendant HOSPITAL), was a corporation engaged in the business of providing medical care (including obstetrical and gynecological services) to members of the public, including Plaintiff JONES and Baby ALAYNA, by and through its nurses, physicians, other healthcare professionals, and other actual, ostensible, and/or apparent agents, employees, and/or servants, including Erika Castro, M.D.; Rebecca Dehoek, M.D.; Sveva Brown, M.D.; and/or Morgan Madison, M.D., Lizabeth Rodriguez, Irina Lozovatskaya R.N., Karen Gillett, RN., Briana Johnson, RN., Jennifer Joseph, R.N., Lillie Smith-Beacham, R.N., Joy, Nfaxooqui Staffid [sic] and/or Kimberley Bruno, R.N., and doing business in the State of Illinois and the County of Cook, which resides within this District.

**ANSWER**:     **Defendant, WEST SUBURBAN, admits that on December 1-2, 2016, it was a corporation engaged in the business of providing medical care to the public. Answering further, this Defendant denies that Erika Castro, M.D., Rebecca Dehoek, M.D., Sveva Brown M.D. and Morgan Madison, M.D. were its actual, ostensible, and/or apparent agents, employees, and/or servants.**

**Defendant admits that on December 1-2, 2016, Lizabeth Rodriguez, Irina Lozovatskaya R.N., Karen Gillett, R.N., Briana Johnson, R.N., Jennifer Joseph, R.N., Lillie Smith-Beacham, R.N., Nishat Farooqui [sic] and Kimberley Bruno, R.N. were its employees. This Defendant has insufficient knowledge to admit or deny the employment status of Joy.**

7.     That during the year 2016 and at all times pertinent herein, Erika Castro, M.D.; Rebecca Dehoek, M.D.; Sveva Brown, M.D.; and/or Morgan Madison, M.D. were physicians,

licensed to practice in the State of Illinois, and were offering to the public obstetrical and gynecological services in or near the County of Cook and within this District.

**ANSWER:**     **Defendant, WEST SUBURBAN, admits the allegations contained in Paragraph 7 of Plaintiff's Complaint at Law.**

8.     That during the year 2016, including but not limited to December 1-2, 2016, and at all times pertinent herein, Erika Castro, M.D.; Rebecca Dehoek, M.D.; Sveva Brown, M.D.; and/or Morgan Madison, M.D. were physicians who provided care and treatment to the PLAINTIFFS, including but not limited to prenatal, intrapartum, neonatal, and/or postpartum care and treatment, while PLAINTIFFS were confined at Defendant HOSPITAL.

**ANSWER:**     **Defendant, WEST SUBURBAN, admits that Rhonda Jones's medical records suggest that Erika Castro, M.D., Rebecca Dehoek, M.D., Sveva Brown, M.D. and Morgan Madison, M.D. provided care and treatment to Plaintiffs Rhonda Hike and Alayna Hike.**

9.     That at all times pertinent to this Complaint, various agents of Defendant USA, including but not limited to Erika Castro, M.D.; Rebecca Dehoek, M.D.; Sveva Brown, M.D.; and/or Morgan Madison, M.D., were employed by and/or were otherwise agents of one or more PCC Community Wellness Centers, which is/are Federally Qualified Healthcare Centers, and those agents of Defendant USA were acting within the scope and course of their employment and/or agency—thereby Defendant USA is vicariously liable for the acts and omissions of such healthcare professionals.

**ANSWER:**     **Defendant, VHS WEST SUBURBAN, makes no answer to the allegations Paragraph of Plaintiffs' Complaint at Law, as this Paragraph is not directed toward this Defendant.**

10.     At all times pertinent herein, the Defendant HOSPITAL did employ and/or retain as employees, servants, and/or agents, either actual, ostensible, or apparent, the following individuals, including but not limited to, Erika Castro, M.D.; Rebecca Dehoek, M.D.; Sveva Brown, M.D.; Morgan Madison, M.D., Lizabeth Rodriguez, Irina Lozovatskaya R.N., Karen Gillett, R.N., Briana Johnson, R.N., Jennifer Joseph, R.N., Lillie Smith-Beacham, R.N., Joy, Nfarooqui Staffid [sic], and/or Kimberley Bruno, R.N., who were acting as the agent, servant or employee of the Defendant HOSPITAL and acting within the scope of said employment and/or agency, whether actual or apparent, and thereby said Defendant HOSPITAL, is vicariously liable for the acts and omissions of the above listed healthcare professionals.

**ANSWER:**     **Defendant, WEST SUBURBAN, denies that Erika Castro, M.D., Rebecca Dehoek, M.D., Sveva Brown, M.D. and Morgan Madison, M.D. were its employees, servants, and/or agents, either actual, ostensible, or apparent. Defendant denies that it is vicariously liable for the acts and omissions of Erika Castro, M.D., Rebecca Dehoek, M.D., Sveva Brown, M.D. and Morgan Madison, M.D.**

> **Answering further, Defendant admits that on December 1-2, 2016, Lizabeth Rodriguez, Irina Lozovatskaya R.N., Karen Gillett, R.N., Briana Johnson, R.N., Jennifer Joseph, R.N., Lillie Smith-Beacham, R.N., Nishat Farooqui [sic] and Kimberley Bruno, R.N. were its employees. This Defendant has insufficient knowledge to admit or deny the employment status of Joy.**

11. The acts of negligence as alleged in this Complaint all took place within the District.

**ANSWER:** **Defendant, WEST SUBURBAN, has insufficient knowledge to admit or deny the allegations contained in Paragraph 11 of Plaintiff's Complaint at Law.**

12. An administrative tort claim was filed with the Department of Health & Human Services (DHHS) on or about May 25, 2017 and has been denied expressly or by inaction thereby exhausting PLAINTIFFS' administrative remedy.

**ANSWER:** **Defendant, WEST SUBURBAN, has insufficient knowledge to admit or deny the allegations contained in Paragraph 12 of Plaintiff's Complaint at Law.**

13. Jurisdiction is conferred upon this Court pursuant to the Federal Tort Claims Act (FTCA) 28 U.S.C. § 1346(b)(1), §1402(b), § 2679(d)(2), and § 1367(a).

**ANSWER:** **Defendant, WEST SUBURBAN, admits only that the statute referenced in Paragraph 13 of Plaintiff's Complaint at Law exists but has insufficient knowledge to admit or deny the remaining allegations and legal conclusions contained in Paragraph 13 of Plaintiff's Complaint at Law.**

14. That at or about 13:29 on December 1, 2016, and for some time prior and subsequent thereto, Plaintiff JONES and her Baby ALAYNA, while *in utero* and thereafter, as a minor, did receive medical care treatment, and attention from various employees and/or agents, whether actual or apparent, of the Defendant HOSPITAL and/or Defendant USA, including but not limited to Erika. Castro, M.D.; Rebecca Dehoek, M.D.; Sveva Brown, M.D.; Morgan Madison, M.D., Lizabeth Rodriguez, Irina Lozovatskaya RN., Karen Gillett, R.N., Briana Johnson, R.N., Jennifer Joseph, R.N., Lillie Smith-Beacham, RN., Joy, Nfarooqui Staffid [sic], and/or Kimberley Bruno, R.N., and other medical personnel.

**ANSWER:** **Defendant, WEST SUBURBAN, admits that Rhonda Jones's medical records suggest that Erika Castro, M.D., Rebecca Dehoek, M.D., Sveva Brown and M.D., Morgan Madison, M.D. provided care to Rhonda Jones and Alayna Hike but denies that Erika Castro, M.D., Rebecca Dehoek, M.D., Sveva Brown, M.D. and Morgan Madison, M.D. were its employees or agents, whether actual or apparent.**

**Defendant admits that Lizabeth Rodriguez, Irina Lozovatskaya R.N., Karen Gillett, R.N., Briana Johnson, R.N., Jennifer Joseph, R.N., Lillie Smith-Beacham, R.N., Nishat Farooqui [sic] and Kimberley Bruno, R.N. were its**

4

**employees. This Defendant has insufficient knowledge to admit or deny the employment status of Joy.**

15.     That prior to December 1, 2016, Plaintiff JONES was seen for prenatal care on at least three (3) occasions where assessments for her pregnancy and fetal well-being were performed. From the available medical records, Plaintiff JONES' prenatal care was unremarkable.

**ANSWER:**     **Defendant, WEST SUBURBAN, admits that Rhonda Jones's medical records suggest that Plaintiff, Rhonda Jones, was seen for prenatal care on at least three (3) occasions where assessments for her pregnancy and fetal well-being and denies the remaining allegations contained in Paragraph 15 of Plaintiff's Complaint at Law.**

16.     That on or about December 1, 2016, Plaintiff JONES was seen in Triage at or about 11:59 initially to rule out labor, and was ordered to receive continuous electronic fetal heart monitoring, and was thereafter admitted to Labor and Delivery for induction of labor.

**ANSWER:**     **Defendant, WEST SUBURBAN, admits that Rhonda Jones's medical records indicate that at approximately 11:59 Rhonda Jones was admitted to WEST SUBURBAN for labor and delivery.  Defendant, WEST SUBURBAN, denies the remaining allegations contained in Paragraph 16 of Plaintiff's Complaint at Law.**

17.     That at the time of admission, Plaintiff JONES was 40 years old, gravida 11, para 9, at 38 5/7 weeks, and presented with possible loss of fluid, visual changes and seeing spots, positive frontal headache, and tingling sensation of bilateral hands.

**ANSWER:**     **Defendant, WEST SUBURBAN, admits that Rhonda Jones's medical records indicate that she presented to the WEST SUBURBAN Emergency Department at 40 years old, gravida 11, para 9 at 38 5/7 weeks and with complaints of fluid loss a frontal headache and visual changes that included seeing spots. Defendant, WEST SUBURBAN, denies the remaining allegations contained in Paragraph 17 of Plaintiff's Complaint at Law.**

18.     That Plaintiff JONES' initial nonstress test indicated the following: fetal heart rate 130s bpm, moderate variability, positive accelerations, no decelerations, irregular contractions, negative ferning and pooling.

**ANSWER:**     **Defendant, WEST SUBURBAN, admits that Rhonda Jones's medical records indicate an initial stress test that reflected a fetal heart rate of 130 beats per minute, moderate viability with positive accelerations and no decelerations, an initial tocometer that reflected irregular uterine contractions and a ferning test that was negative with no pooling.**

19.     That the presentation was consistent with a healthy and neurologically intact unborn baby.

**ANSWER:**     Defendant, WEST SUBURBAN, denies the allegations contained in Paragraph 19 of Plaintiff's Complaint at Law.

20.     That the medical records indicate at or about 13:45 on December 1, 2016 that a vaginal exam was performed and indicated the following: l cm / 10% effaced / -4 station. At this time, the records also indicate, a non-tender abdomen and reflexes +2.

**ANSWER:**     Defendant, WEST SUBURBAN, admits the allegations contained in Paragraph 20 of Plaintiff's Complaint at Law.

21.     That Plaintiff JONES was induced for diagnosis of severe preeclampsia. She was provided labetalol and Magnesium sulfate.

**ANSWER:**     Defendant, WEST SUBURBAN, admits that Rhonda Jones's medical records indicate that she was assessed for preeclampsia with severe features and was given Magnesium Sulfate and Labetalol.

22.     Based upon Plaintiff JONES' presentation, including but not limited to the following risk factors: advanced maternal age, extreme grand parity, severe preeclampsia with severe features, possible gestational diabetes, limited prenatal care, and obesity, Plaintiff JONES was a high-risk patient who needed to be assessed and/or managed by specialists including maternal fetal medicine specialist(s) and/or obstetrician-gynecologist(s) during her admission.  Instead, Plaintiff JONES' labor was managed exclusively by the agents and/or employees of Defendant HOSPITAL and/or Defendant USA, including family medicine physicians, who do not have the specialized training, education, and experience to appropriately care for a patient such as Plaintiff JONES.

**ANSWER:**     Defendant, WEST SUBURBAN, denies the allegations contained in Paragraph 22 of Plaintiff's Complaint at Law.

23.     The physician orders indicate that Plaintiff JONES was to be placed on continuous electronic fetal heart monitoring, which tracing started at or about 11:59 on December 1, 2016, through at or about 00:32 December 2, 2016.

**ANSWER:**     Defendant, WEST SUBURBAN, admits only to the extent that Rhonda Jones's medical records indicate that continuous electronic fetal monitoring was ordered at 13:29 and at 17:26 on December 1, 2016. Defendant denies the remaining allegations contained in Paragraph 23 of Plaintiff's Complaint at Law.

24.     Between approximately 11:59 on December 1, 2016 and 00:32 on December 2, 2016, despite the order for continuous monitoring, there are hours of tracing that are illegible or otherwise unreadable as to the status of the fetal heart rate and/or the contractions. By way of example but without limitation:
  –     At or about 17:07 (on 12/1/2016) the nurse comment includes that the fetal heart rate is not tracing;
        At or about 18:08 (on 12/1/2016) the records indicate difficulty getting FHR;

At or about 18:56 (on 12/1/2016) irritability of the contractions was noted, which is a known indicator of potential irritation from bleeding which can presage abruption;

- At or about 19:58 (on 12/1/2016) the records indicate "R.N. at bedside, attempting to get heart tones";
- At or about 20:13 (on 12/1/2016) the records indicate "notified MCH of difficulty obtaining heart tones, will assess fetal position";

At or about 21:0I (on 12/1/2016) the records indicate the presence of minimal variability;

At or about 21:15 (on 12/1/2016) there is poor pick-up or detection of the fetal heart, and the medical records indicate "Dilatation: 2.0, Effacement: 50, Station: -3."

- At 21:30 (on 12/1/2016) the records indicate the presence of minimal variability;

From approximately 21:45 — 22:15 (on 12/1/2016) there is poor pickup or detection of the fetal heart rate;

At 22:15 (on 12/1/2016) the records indicate the presence of minimal variability;

From approximately 22:40 (on 12/1/2016) to 00:33 (on 12/2/2016) there is poor pick-up or detection of the fetal heart rate;

At 00:10 (on 12/2/2016) the records indicate "attempting to get fetal heart tones at this time";

- At 00:13 (on 12/2/2016) the records indicate "RN at bedside, Provider at bedside...attempting to get fetal heart tones at this time";
- At 00:19 (on 12/2/2016) the records indicate "attempting to obtain fetal heart tones per external monitor...";

At 00:26 the medical records indicate "pulse ox placed on mom to verify maternal heart rate."

**ANSWER:**     Defendant, WEST SUBURBAN, denies the allegations contained in Paragraph 24 of Plaintiff's Complaint at Law.

25.     During the admission on December 1-2, 2016, prior to the delivery of Baby ALAYNA, there is an absence of reasonable nursing and/or medical charting, documentation, or recording such that the patients were not being monitored as ordered and required and/or the charting, documentation, recording was not performed as required and/or the charting, documentation, and/or recording was created but has since been lost, is missing, or was destroyed.

**ANSWER:**     Defendant, WEST SUBURBAN, denies the allegations contained in Paragraph 25 of Plaintiff's Complaint at Law.

26.     At or about 00:13 a.m., on December 2, 2016, upon rupture of membranes, the records indicate that Plaintiff JONES was having severe abdominal pain, SVE (sterile vaginal exam) was reported at 7-8cm dilation, and at this point the primary care nurse was unable to obtain the fetal heart rate on the monitor and fetal scalp electrode was placed evidencing a fetal heart rate in the 60s bpm.

**ANSWER:** **Defendant, WEST SUBURBAN, admits that Rhonda Jones's medical records indicate that at about 00:13 Rhonda Jones's membrane ruptured, a fetal scalp electrode was placed that measured a fetal heart rate in the 60s and a stat C-section was ordered. Defendant, WEST SUBURBAN, denies the remaining allegations contained in Paragraph 26 of Plaintiff's Complaint at Law.**

27.     At or about 00:32 the records indicate "consent for surgery done by Dr. Brown and Dr. Madison, verified by Briana Johnson RN."

**ANSWER:** **Defendant, WEST SUBURBAN, admits that Rhonda Jones's medical records indicate that at 00:32 she gave verbal consent for surgery done by Dr. Brown and Dr. Madison, verified by Briana Johnson, R.N.**

28.     The records indicate that crash C-section was performed with delivery of Baby ALAYNA at or about 00:49 on December 2, 2016.

**ANSWER:** **Defendant, WEST SUBURBAN, admits the allegations contained in Paragraph 28 of Plaintiff's Complaint at Law.**

29.     The medical records indicate "baby Girl Jones [Baby ALAYNA] delivered 12/2/16 @ 00:49 by emergency c/s secondary to fetal bradycardia/decels. Maternal history 40 y/o G11P90010 scant PNC, presented to triage [with] possible SROM, headache/vision changes, elevated B/P, accu ✓ 66, admitted for IOL [secondary to] severe pre-eclampsia. Started on mag sulfate. Given stadol for pain. Fetal HR persistently 60s, so stat C/S performed. ROM officially 00:13. Baby delivered [with] no spontaneous movement, cyanotic, no resp effort. Started PPV immediately and HR improved to > 100. Still no resp effort although color improved, no movement. Intubated at 10 min of life [with] 3.5 ETT, taped @ 9cm..."

**ANSWER:** **Defendant, WEST SUBURBAN, admits that Rhonda Jones's medical records contain the above notation but denies the remaining allegations or legal conclusions contained in Paragraph 29 of Plaintiff's Complaint at Law.**

30.     The Progress Record from Dr. Rodriguez, a resident-physician, at or about December 2, 2016 at 01:00a.m., "Baby Girl Jones [Baby ALAYNA] born to a 40y/o Gl1P90010 at 38+6 based on 14 wk US. Mom had hx of GDM during her last two pregnancies. Scant prenatal care with only 3 visits. Elevated 1 hr GTT and never completed 3hr GTT. Mom presented to triage with possible SROM, frontal headache tingling sensation of bilateral hands, and vision changes. No p.o. intake for 1 day. SROM was ruled out. Mom found to have an Accucheck of 66, BP initially @ 130s but progressively increase to severe range SBP 160-170s. Mom admitted for IOL for pre-eclampsia w/ severe features. Started on mag at 6pm; last level 3.2. Continue to contracting q 7-10 minutes and officially SROM at 00:13, clear fluid, cervical check 5cm / 70% / -2station. Stadol given for pain control. Attempt at placing fetal scalp monitor showed a persistent heart rate 60s, prior to rupture of membranes. HR 120s-130s. Emergent C-section for possible placenta abruption. Apgars 1,5,8. After stimulation HR continued at 50-60bpm, 02 at 100% was provided resulting in improvement of HR to >100..."

**ANSWER**:     **Defendant, WEST SUBURBAN, admits that Rhonda Jones's medical records contain the above progress record but denies the remaining allegations or legal conclusions contained in Paragraph 30 of Plaintiff's Complaint at Law.**

31.     The records indicate that cord blood samples were drawn and analyzed, yielding the following blood gas values: umbilical venous pH 6.63 and umbilical arterial pH 6.52. The records also indicate that follow-up blood gases were analyzed at or about 40 minutes of life, which indicated a pH of 7.14 and base excess of -20.

**ANSWER**:     **Defendant, WEST SUBURBAN, admits the allegations contained in Paragraph 31 of Plaintiff's Complaint at Law.**

32.     Plaintiff JONES needed and was provided packed red blood cells and a transfusion for intraoperative hemorrhage. She was given a diagnosis of premature separation of placenta with Disseminated Intravascular Coagulation ("D.I.C.").

**ANSWER**:     **Defendant, WEST SUBURBAN, admits that Rhonda Jones's medical records noted that the placenta was non-attached, that Rhonda Jones was provided a blood transfusion of packed red blood cells and that Rhonda Jones had possible D.I.C. but denies the remaining allegations contained in Paragraph 32 of Plaintiff's Complaint at Law.**

33.     Following birth, Baby ALAYNA was transported to Lurie Children's Hospital and was treated with hypothermia whole-body cooling for severe encephalopathy, was given a diagnosis of Hypoxic Ischemic Encephalopathy, was given phenobarbital, had both clinical seizures and as confirmed on EEG, and was administered an MRI that was interpreted as abnormal with marked diffusion consistent with severe, acute intrapartum Hypoxic Ischemic Encephalopathy.

**ANSWER**:     **Defendant, WEST SUBURBAN, admits that Rhonda Jones's medical records indicate that Alayna Hike was transported to Lurie Children's Hospital. Defendant has insufficient knowledge to admit or deny the remaining allegations contained in Paragraph 33 of Plaintiff's Complaint at Law.**

34.     Currently, Baby ALAYNA's condition includes a diagnosis of Hypoxic Ischemic Encephalopathy, motoric and mental disabilities, seizures, the need for anti-seizure medication, and, on information and belief, both currently and in the future requires extensive care, treatment and therapies.

**ANSWER**:     **Defendant, WEST SUBURBAN, has insufficient knowledge to admit or deny the allegations contained in Paragraph 34 of Plaintiff's Complaint at Law.**

35.     Baby ALAYNA's severe injuries are permanent, and will require extensive care and treatment into the future. She is, on information and belief, unlikely to live independently or be competitively employed. She is at risk for Cerebral Palsy.

**ANSWER**:    Defendant, WEST SUBURBAN, has insufficient knowledge to admit or deny the allegations contained in Paragraph 35 of Plaintiff's Complaint at Law.

<u>COUNT I — Medical Negligence —U.S.A.</u>

Defendant, VHS WEST SUBURBAN MEDICAL CENTER, INC. d/b/a WEST SUBURBAN MEDICAL CENTER, makes no answer to the allegations of Count I of Plaintiffs' Complaint at Law, as this Count is not directed toward this Defendant.  To the extent that WEST SUBURBAN is required to answer the allegations of Count I, they are denied.

<u>COUNT II — Medical Negligence — Defendant WEST SUBURBAN</u>

45.    That during the year 2016 and at all times relevant herein, the Defendant HOSPITAL was and still is a hospital corporation and was offering to the public obstetrical and gynecological services by and through their physicians, nurses, other healthcare professionals, employees, and agents in Chicago, Illinois, County of Cook.

**ANSWER**:    Defendant, WEST SUBURBAN, admits the allegations contained in Paragraph 45 of Count II of Plaintiffs' Complaint at Law.

46.    That during the year 2016 and at all times relevant herein, the Defendant HOSPITAL did retain actual and/or apparent agents, servants, and/or employees, including but not limited to Erika Castro, M.D.; Rebecca Dehoek, M.D.; Sveva Brown, M.D.; Morgan Madison, M.D., Lizabeth Rodriguez, Irina Lozovatskaya R.N., Karen Gillett, R.N., Briana Johnson, R.N., Jennifer Joseph, R.N., Lillie Smith-Beacham, R.N., Joy, Nfarooqui Staffid [sic], and Kimberley Bruno, R.N., who while acting within the course and scope of their employment or agency, did care, treat, and/or diagnose or undertake to care, treat and/or diagnose, or supervise the care and treatment and medical condition of both Plaintiff JONES and Baby ALAYNA.

**ANSWER**:    Defendant, WEST SUBURBAN, denies that in the year 2016, Erika Castro, M.D., Rebecca Dehoek, M.D., Sveva Brown, M.D. and Morgan Madison, M.D., were its actual and/or apparent agents, servants, and/or employees. Answering further, Defendant admits that in the year 2016, Lizabeth Rodriguez, Irina Lozovatskaya R.N., Karen Gillett, R.N., Briana Johnson, R.N., Jennifer Joseph, R.N., Lillie Smith-Beacham, R.N., Nishat Farooqui [sic] and Kimberley Bruno, R.N. were its employees.  This Defendant has insufficient information to answer on the employment status of Joy. Defendant, WEST SUBURBAN, denies the remaining allegations contained in Paragraph 46 of Count II of Plaintiff's Complaint at Law.

47.    That on or about December 1-2, 2016, and for some time prior and subsequent thereto, Plaintiff JONES and Baby ALAYNA, were admitted to Defendant HOSPITAL by and through its agents and/or employees including but not limited to Erika Castro, M.D.; Rebecca Dehoek, M.D.; Sveva Brown, M.D.; Morgan Madison, M.D., Lizabeth Rodriguez, Irina Lozovatskaya R.N., Karen Gillett, R.N., Briana Johnson, R.N., Jennifer Joseph, R.N., Lillie Smith-Beacham, R.N., Joy, Nfarooqui Staffid [sic], Kimberley Bruno, R.N., and were at all times within

the sole and explicit care, custody and control of the Defendant HOSPITAL and/or its authorized agents, servants, employees, and representatives, acting within the course and scope of their employment.

**ANSWER:** **Defendant, WEST SUBURBAN, admits that Plaintiffs Rhonda Jones and Alayna Hike were admitted to WEST SUBURBAN. Answering further, this defendant denies that Erika Castro, M.D., Rebecca Dehoek, M.D., Sveva Brown, M.D. and Morgan Madison, M.D. were its actual and/or apparent agents, servants, and/or employees. Defendant admits that Lizabeth Rodriguez, Irina Lozovatskaya R.N., Karen Gillett, R.N., Briana Johnson, R.N., Jennifer Joseph, R.N., Lillie Smith-Beacham, R.N., Nishat Farooqui [sic] and Kimberley Bruno, R.N. were its employees. Defendant has insufficient information to answer on the employment status of Joy. Defendant, WEST SUBURBAN, denies the remaining allegations and legal conclusions contained in Paragraph 47 of Count II of Plaintiff's Complaint at Law.**

49.    That all care and treatment and facilities within Defendant HOSPITAL, and the selections of persons and personnel whose custody and care of Plaintiff JONES, and Baby ALAYNA, both while *in utero* and thereafter, were made by Defendant HOSPITAL, and/or its authorized agents, servants, employees, and representatives, acting within the course and scope of their employment.

**ANSWER:** **Defendant, WEST SUBURBAN, denies the allegations contained in Paragraph 49 of Count II of Plaintiffs' Complaint at Law.**

50.    That on or about December 1-2, 2016 and at all times relevant herein, Defendant HOSPITAL, individually, and/or by and through its various agents and/or employees including but not limited to Erika Castro, M.D.; Rebecca Dehoek, M.D.; Sveva Brown, M.D.; Morgan Madison, M.D., Lizabeth Rodriguez, Irina Lozovatskaya R.N., Karen Gillett, R.N., Briana Johnson, R.N., Jennifer Joseph, R.N., Lillie Smith-Beacham, R.N., Joy, Nfarooqui Staffid [sic], Kimberley Bruno, R.N., did undertake the care of Plaintiff JONES and Baby ALAYNA during the course of the prenatal, intrapartum, neonatal, and/or postpartum periods.

**ANSWER:** **Defendant, WEST SUBURBAN, admits that Plaintiffs Rhonda Jones and Alayna Hike were treated at WEST SUBURBAN. Answering further, this defendant denies that Erika Castro, M.D., Rebecca Dehoek, M.D., Sveva Brown, M.D. and Morgan Madison, M.D. were its actual and/or apparent agents, servants, and/or employees. Defendant admits that Lizabeth Rodriguez, Irina Lozovatskaya R.N., Karen Gillett, R.N., Briana Johnson, R.N., Jennifer Joseph, R.N., Lillie Smith-Beacham, R.N., Nishat Farooqui [sic] and Kimberley Bruno, R.N. were its employees. Defendant has insufficient information to answer on the employment status of Joy. Defendant, WEST SUBURBAN, denies the remaining allegations and contained in Paragraph 50 of Count II of Plaintiff's Complaint at Law.**

51.    That on or about December 1-2, 2016 and at all times relevant herein, it then and there became the duty of Defendant HOSPITAL, individually, and/or by and through its

various agents and/or employees including but not limited to Erika Castro, M.D.; Rebecca Dehoek, M.D.; Sveva Brown, M.D.; Morgan Madison, M.D., Lizabeth Rodriguez, Irina Lozovatskaya R.N., Karen Gillett, R.N., Briana Johnson, R.N., Jennifer Joseph, R.N., Lillie Smith-Beacham, R.N., Joy, Nfarooqui Staffid [sic], Kimberley Bruno, R.N., to render health care services consistent with the medical requirements of the patients Plaintiff JONES and Baby ALAYNA, and to possess and apply that degree of care, treatment, and skill commonly exercised by other health professional facilities in the same or similar circumstances and to avoid harm.

**ANSWER**: **Defendant, WEST SUBURBAN, denies that in the year 2016, Erika Castro, M.D., Rebecca Dehoek, M.D., Sveva Brown, M.D. and Morgan Madison, M.D., were its actual and/or apparent agents, servants, and/or employees. Answering further, Defendant, WEST SUBURBAN, maintains that duties arise by operation of law and not the allegations of the pleader, and therefore, denies the allegations and legal conclusions contained in Paragraph 51 of Count II of Plaintiff's Complaint at Law.**

52.     After assuming the care and treatment of Plaintiff JONES and Baby ALAYNA, the Defendant HOSPITAL, individually, and/or by and through its various agents and/or employees including but not limited to Erika Castro, M.D.; Rebecca Dehoek, M.D.; Sveva Brown, M.D.; Morgan Madison, M.D., Lizabeth Rodriguez, Irina Lozovatskaya R.N., Karen Gillett, R.N., Briana Johnson, RN., Jennifer Joseph, R.N., Lillie Smith-Beacham, RN., Joy, Nfarooqui Staffid [sic], Kimberley Bruno, R.N., deviated from the accepted standard of care and were then and there guilty of one or more of the following negligent acts and/or omissions:

a.     Failure to perform a timely cesarean section which would have prevented injury to Baby ALAYNA;

b.     Failure to appreciate and identify the patient's high-risk status and timely and appropriately treat the patient's high-risk factors;

c.     Failure to obtain an appropriate consultation of an appropriate medical specialist competent and capable of managing the patient's high-risk conditions including consultation with a maternal fetal medicine specialist and/ or an obstetrician/gynecologist;

d.     Failure to appreciate the presence of multiple high-risk factors that required a higher level of monitoring and intervention, which was not provided and led to fetal compromise;

e.     Failure to assess the intrapartum fetal status including but not limited to the fetal heart monitor tracing and contraction monitor and changes thereof which were indicative of deterioration of the fetal status including but not limited, to consistent with hypoxia and/or ischemia which necessitated interventions to correct and should said interventions fail to improve the condition, failure to deliver earlier;

f.     Failure to follow physician orders including but not limited to continuously electronically monitor the fetal heart rate during labor;

g.     Failure to monitor and record the fetal heart rate throughout labor which was, for a large portion of the admission before delivery, uninterpretable and unreadable;

h.     Failure to order and/or place internal monitoring devices such as a fetal scalp electrode (FSE) and intrauterine pressure catheter (IUPC) to properly monitor the fetal heartrate and uterine activity;

i.     Failure to keep proper medical and/or nursing documentation including but not limited to progress notes, physician notes, nursing notes, flowsheet notes, vital signs, labor assessments, fetal heart rate assessments, uterine assessments, patient assessments, etc.;

j.     Failure to assess the intrapartum fetal status including but not limited to the fetal heart monitor tracing and contraction monitor and changes thereof which were with indicative of irritability of the uterus consistent with bleeding and/or abruption which necessitated interventions to correct and should said interventions fail to improve the condition, failure to deliver earlier;

k.     Failure on the part of the agents, servants, and/or employees of the hospital including nurses to inform the physicians of the fetal status and to advocate for earlier delivery;

l.     Failure to provide adequate informed consent regarding the nature of the risks to the unborn baby of brain injury to a fetus deprived of oxygen during labor, and failure to react appropriately thereto including but not limited to earlier delivery;

m.     Failure to adequately inform and/or perform a Cesarean section delivery in order to avoid intrapartum hypoxic ischemic neurologic injury and/or traumatic injury;

n.     Failure to perform a timely cesarean section which would have prevented injury to Baby ALAYNA;

o.     Failure to properly manage Plaintiff JONES' labor including but not limited to failure to perform earlier delivery;

p.     Failure to perform intrapartum fetal evaluations and/or interpret abnormal signs and/or symptoms and intervene earlier;

q.     Failure to utilize the chain of command when notification of concerning signs and symptoms were not immediately responded to; in other words, the health care provider(s) should have called for and obtained physician(s) to treat the patients, prepare for timely surgery, and expeditiously deliver the baby rather than to allow the baby to continue to deteriorate at a time the health care provider(s) knew or should have known that to fail to intervene with earlier delivery would substantially increase the risk of harm to the baby;

r.     Failure to promulgate, implement, and maintain reasonable and appropriate policies and procedures;

s.     Failure to retain a full, complete, and legible copy of the medical records;

t.     Failure to maintain and provide proper and adequate documentation including but not limited to nursing notes, triage notes, plan of care regarding notification of physicians, nurses and staff for assessment and treatment; and

u.     Failure to hire and/or credential competent and qualified providers, including physicians and nurses, with the adequate training, education, and experience to manage intrapartum and obstetrical patients and/or failure to fire and/or remove/ de-credential incompetent and/or unqualified providers, including physicians and nurses, such that the incompetent and/or unqualified providers could not cause patients harm;

v.    Any other breaches of the standard of care revealed during discovery in this matter.

**ANSWER:**    **Defendant, WEST SUBURBAN, makes no answer to paragraph 52, subparagraphs (r) – (v) of Count II of Plaintiff's Complaint at Law, as these allegations are subject to Defendant, WEST SUBURBAN'S Motion to Strike, attached hereto as Exhibit A.**

**Answering further, Defendant, WEST SUBURBAN, denies the allegations and legal conclusions contained in Paragraph 52 of Count II of Plaintiff's Complaint at Law, including subparagraphs (a) through (q) and each of them.**

53.    That a reasonably prudent health care provider under the same or similar conditions would not have committed the aforementioned negligent acts and/or omissions.

**ANSWER:**    **Defendant, WEST SUBURBAN, denies the allegations contained in Paragraph 53 of Count II of Plaintiff's Complaint at Law.**

54.    That as a direct and proximate result of one or more of the aforesaid acts of negligence, Baby ALAYNA did sustain serious and permanent injuries (including severe Hypoxic lschemic Encephalopathy and severe brain injuries, seizures, and mental and motoric deficits).

**ANSWER:**    **Defendant, WEST SUBURBAN, denies the allegations contained in Paragraph 54 of Count II of Plaintiff's Complaint at Law**

55.    That as a direct and proximate result of one or more of the aforesaid acts of negligence, the PLAINTIFFS have suffered great pain, suffering, disability and will in the future continue to endure such pain, psychological, neurological, and emotional injuries, and will incur large medical expenses.

**ANSWER:**    **Defendant, WEST SUBURBAN, denies the remaining allegations and contained in Paragraph 55 of Count II of Plaintiff's Complaint at Law.**

56.    That as a direct and proximate result of one or more of the aforesaid acts of negligence, the PLAINTIFFS did sustain other pecuniary loss and other expenses and damages and will in the future incur other pecuniary loss and expense.

**ANSWER:**    **Defendant, WEST SUBURBAN, denies the remaining allegations and contained in Paragraph 56 of Count II of Plaintiff's Complaint at Law.**

57.    That as a direct and proximate result of one or more of the aforesaid acts of negligence, the PLAINTIFFS have incurred, and will continue to incur, medical and other expenses for the extraordinary needs of Baby ALAYNA for which they claim compensation herein.

**ANSWER:**     Defendant, **WEST SUBURBAN, denies the remaining allegations and contained in Paragraph 57 of Count II of Plaintiff's Complaint at Law.**

58.     PLAINTIFFS attach the Affidavit of their attorney, pursuant to the provisions of 735 ILCS 5/2-622(a)(2), verifying that this action has not previously been voluntarily dismissed and that the Plaintiffs have been able to obtain a consultation required by 735 ILCS 5/2622(a)(1) as <u>Exhibit A.</u> The corresponding report of qualified physician is attached hereto as <u>Exhibit B.</u>

**ANSWER:**     Defendant, **WEST SUBURBAN, admits that said reports are attached but denies the sufficiency thereof.**

WHEREFORE, Defendant, WEST SUBURBAN, respectfully requests this Honorable Court

strike and dismiss Count II of Plaintiff's Complaint at Law with Prejudice.

**JURY DEMAND**

Defendant, VHS WEST SUBURBAN MEDICAL CENTER, INC. d/b/a WEST SUBURBAN MEDICAL CENTER demands a trial by jury.

Respectfully submitted,

SMITHAMUNDSEN LLC


BY:_____/s/ Colin P. Gainer_____
          Attorneys for Defendant
          West Suburban Medical Center



Colin P. Gainer - #6299806
Carmel Cosgrave = #3127000
Anna S. Morrissey - #6324380
SmithAmundsen LLC
150 North Michigan Avenue, Suite 3300
Chicago, IL 60601
(312) 894-3200
(312) 894-3210 – FAX
<u>cgainer@salawus.com</u>
<u>ccosgrave@salawus.com</u>
<u>amorrissey@salawus.com</u>

15

3033987-CMC/CPG/ASM                                            ARDC#6299806

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DEVON BANK as the Guardian of the Estate of )
ALAYNA HIKE, a minor, and )
RHONDA JONES, Individually, )
                                                          )
                              Plaintiffs,        )
                                                          )
              vs.                                     )          NO:      17-cv-09286
                                                          )
UNITED STATES OF AMERICA and )
VHS WEST SUBURBAN MEDICAL CENTER, INC. )
d/b/a WEST SUBURBAN MEDICAL CENTER, )
                                                          )
                              Defendants.      )

### CERTIFICATE OF SERVICE

        I, Colin P. Gainer, hereby certify that on the **23rd day of February, 2018**, a copy of the foregoing **Answer to Plaintiff's Complaint** was filed electronically.  Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system if they are registered with the CM/ECF E-Filing System.  Parties may access this filing through the Court's system.


                                                  /s/ Colin P. Gainer
                                                  Colin P. Gainer, ARDC #6299806
                                                  Attorneys for Defendant, WSMC

Smith Amundsen LLC
150 N. Michigan Avenue, Suite 3300
Chicago, Illinois 60601
Telephone: (312) 894-3200
Fax:  (312) 894-3210