UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DEVON BANK, as the Guardian of the )
Estate of ALAYNA HIKE, a minor, and )
RHONDA JONES, Individually, )
　　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　 )
　　　　　　　　　Plaintiffs, )
　　　　　　　　　　　　　　　　　　 )
　　　　　　　v. )　　No. 17 C 9286
　　　　　　　　　　　　　　　　　　 )
UNITED STATES OF AMERICA and )　　Judge Lee
VHS WEST SUBURBAN MEDICAL )
CENTER, INC. d/b/a WEST SUBURBAN )
MEDICAL CENTER, )
　　　　　　　　　　　　　　　　　　 )
　　　　　　　　　Defendants. )

**THE UNITED STATES' ANSWER
TO PLAINTIFFS' COMPLAINT AT LAW**

　　　The United States, by its attorney, John R. Lausch, Jr., United States Attorney for the Northern District of Illinois, for its answer to plaintiffs' complaint, states as follows:

**First Defense**

　　　The Illinois doctrine of comparative fault applies to eliminate or reduce any recovery against the United States.

**Second Defense**

　　　The Illinois right of contribution among joint tortfeasors applies to eliminate or reduce any recovery against the United States.

**Third Defense**

　　　Plaintiffs' damages, if any, are limited to the amount set forth in the administrative claim received by the Department of Health and Human Services on June 5, 2017.

**Fourth Defense**

Any recovery by plaintiffs should be eliminated or reduced by amounts paid by insurance and governmental health programs.  735 Ill. Comp. Stat. 5/2-1205.

**Fifth Defense**

Any recovery by plaintiffs is subject to the availability of appropriated funds.  42 U.S.C. § 233(k).

**Sixth Defense**

Plaintiffs are not entitled to a trial by jury with regard to their counts directed against the United States.  28 U.S.C. § 2402.

**Seventh Defense**

Plaintiffs' recovery for future damages, if any, should be awarded in a manner that approximates the periodic payment provisions of the Illinois Healing Art Malpractice Act, 735 ILCS 5/2-1706 through 5/2-1718.

**Eighth Defense**

Answering the specific allegations of the complaint, the defendant United States admits, denies, or otherwise avers as follows:

**<u>General Allegations</u>**

1.     **Complaint:**  The  PLAINTIFF,  RHONDA  JONES  (hereinafter  "Plaintiff JONES" or "RHONDA JONES"), is the natural mother of the minor, ALAYNKA HIKE (hereinafter  "Baby  ALAYNA"  or  "ALAYNKA  HIKE")  (collectively  referred  to  as "PLAINTIFFS").

     **Response:**  Admit.

2.     **Complaint:**  At all times pertinent herein, Plaintiff JONES and Baby ALAYNA

2

were residents of the State of Illinois, County of Cook and lived within the Northern District of Illinois (District).

               **Response:**     The United States lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 2; accordingly, they are denied.

3.     **Complaint:**     In various places throughout the medical records, ALAYNA HIKE is referenced by many other names, including the following: "Alayna Jones," "Elaine Jones," "Elaine Hike," "Elaina Jones," "Elaina Hike," "Aalayna Jones," and/or "Aalayna Hike."

               **Response:**     Admit.

4.     **Complaint:**     DEVON BANK was appointed "Guardian of the Estate of ALAYNA HIKE" in the Circuit Court of Cook County - Probate Division on April 14, 2017 (Case No.: 2017 P 2006).

               **Response:**     The United States lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 4; accordingly, they are denied.

5.     **Complaint:**     Defendant UNITED STATES OF AMERICA (hereinafter referred to as Defendant USA) is named as a Defendant pursuant to the requirements of the Federal Tort Claims Act (FTCA) 28 U.S.C. § 2671.

               **Response:**     Admit.

6.     **Complaint:**     At all times pertinent herein, including but not limited to on and before December 1-2, 2016, the defendant, VHS WEST SUBURBAN MEDICAL CENTER, INC. d/b/a WEST SUBURBAN MEDICAL CENTER (hereinafter Defendant HOSPITAL), was a corporation engaged in the business of providing medical care (including obstetrical and gynecological services) to members of the public, including Plaintiff JONES and Baby ALAYNA, by and through its nurses, physicians, other healthcare professionals, and other actual, ostensible,

and/or apparent agents, employees, and/or servants, including Erika Castro, M.D.; Rebecca Dehoek, M.D.; Sveva Brown, M.D.; and/or Morgan Madison, M.D., Lizabeth Rodriguez, Irina Lozovatskaya R.N., Karen Gillett, R.N., Briana Johnson, R.N., Jennifer Joseph, R.N., Lillie Smith-Beacham, R.N., Joy, Nfarooqui Staffid, and/or Kimberley Bruno, R.N., and doing business in the State of Illinois and the County of Cook, which resides within this District.

      **Response:**    The allegations in paragraph 6 are not directed to the United States, thus no response from the United States is required. To the extent that a response is required, the United States denies that Drs. Castro, DeHoek, Brown, and Madison were actual, ostensible, and/or apparent agents, employees, and/or servants of the Hospital. The United States admits that on or about December 1-2, 2016, Drs. Castro, DeHoek, Brown, and Madison were employed by PCC Community Wellness Center ("PCC"), a deemed entity of the United States Public Health Service ("USPHS") pursuant to the Federally Supported Health Centers Assistance Acts of 1992 ("FSHCAA"), and had privileges at West Suburban Medical Center (hereinafter "Hospital"), located in Cook County, Illinois, to provide medical care to individuals, who were receiving inpatient care at the Hospital and were PCC patients, including plaintiff Rhonda Jones (hereinafter "Jones") and Alayna.

     7.    **Complaint:**    That during the year 2016 and at all times pertinent herein, Erika Castro, M.D.; Rebecca Dehoek, M.D.; Sveva Brown, M.D.; and/or Morgan Madison, M.D. were physicians, licensed to practice in the State of Illinois, and were offering to the public obstetrical and gynecological services in or near the County of Cook and within this District.

      **Response:**    The United States admits that during the year 2016 and at all times pertinent herein, Drs. Castro, DeHoek, Brown, and/or Madison were physicians, licensed to practice in the State of Illinois, and were offering medical care and treatment as

providers employed by PCC, located in the County of Cook. The United States denies the remaining allegations of paragraph 7.

8.     **Complaint:**     That during the year 2016, including but not limited to December 1-2, 2016, and at all times pertinent herein, Erika Castro, M.D.; Rebecca Dehoek, M.D.; Sveva Brown, M.D.; and/or Morgan Madison, M.D. were physicians who provided care and treatment to the PLAINTIFFS, including but not limited to prenatal, intrapartum, neonatal, and/or postpartum care and treatment, while PLAINTIFFS were confined at Defendant HOSPITAL.

**Response:**     The United States admits that during on or about December 1-2, 2016, during the time that plaintiffs were admitted to the Hospital, Drs. DeHoek, Brown, and Madison provided care and treatment to plaintiffs, including prenatal, intrapartum, neonatal, and/or postpartum care and treatment. The United States denies the remaining allegations of paragraph 8.

9.     **Complaint:**     That at all times pertinent to this Complaint, various agents of Defendant USA, including but not limited to Erika Castro, M.D.; Rebecca Dehoek, M.D.; Sveva Brown, M.D.; and/or Morgan Madison, M.D., were employed by and/or were otherwise agents of one or more PCC Community Wellness Centers, which is/are Federally Qualified Healthcare Centers, and those agents of Defendant USA were acting within the scope and course of their employment and/or agency—thereby Defendant USA is vicariously liable for the acts and omissions of such healthcare professionals.

**Response:**     The United States admits that during all times pertinent to this complaint, Drs. Castro, DeHoek, Brown, and Madison were employed by PCC, a deemed entity of the USPHS pursuant to FSHCAA, and that Drs. Castro, DeHoek, Brown, and Madison were acting within the scope of their employment at PCC while providing care and

treatment at the Hospital on December 1-2, 2016. The United States denies the remaining allegations of paragraph 9.

10. **Complaint:** At all times pertinent herein, the Defendant HOSPITAL did employ and/or retain as employees, servants, and/or agents, either actual, ostensible, or apparent, the following individuals, including but not limited to, Erika Castro, M.D.; Rebecca Dehoek, M.D.; Sveva Brown, M.D.; Morgan Madison, M.D.; Lizabeth Rodriguez; Irina Lozovatskaya R.N.; Karen Gillett, R.N.; Briana Johnson, R.N.; Jennifer Joseph, R.N.; Lillie Smith-Beacham, R.N.; Joy Nfarooqui Staffid; and/or Kimberley Bruno, R.N., who were acting as the agents, servants or employees of the Defendant HOSPITAL and acting within the scope of said employment and/or agency, whether actual or apparent, and thereby said Defendant HOSPITAL is vicariously liable for the acts and omissions of the above listed healthcare professionals.

**Response:** The allegations in paragraph 10 are not directed to the United States, thus no response from the United States is required. To the extent that a response is required, the United States denies that Drs. Castro, DeHoek, Brown, and Madison were actual, ostensible, and/or apparent agents, employees, and/or servants of the Hospital. The United States admits that during all times pertinent to this complaint, Drs. Castro, DeHoek, Brown, and Madison were employed by PCC, a deemed entity of the USPHS pursuant to FSHCAA, and that Drs. Castro, DeHoek, Brown, and Madison were acting within the scope of their employment at PCC while providing care and treatment at the Hospital on December 1-2, 2016.

11. **Complaint:** The acts of negligence as alleged in this Complaint all took place within the District.

6

**Response:** The United States admits that the acts alleged in this complaint occurred at the Hospital, which is located within the District. The United States denies the remaining allegations of paragraph 11.

12. **Complaint:** An administrative tort claim was filed with the Department of Health & Human Services (DHHS) on or about May 25, 2017 and has been denied, expressly or by inaction, thereby exhausting PLAINTIFFS' administrative remedy.

**Response:** The United States admits that on June 5, 2017, the Department of Health & Human Services ("DHHS") received an administrative tort claim filed by Jones and that the time of the filing of this complaint, DHHS had not acted on Jones' administrative claim. On February 8, 2018, DHHS denied Jones' administrative claim. Defendant denies the remaining allegations of paragraph 12.

13. **Complaint:** Jurisdiction is conferred upon this Court pursuant to the Federal Tort Claims Act (FTCA) 28 U.S.C. § 1346(b)(l), §1402(b), § 2679(d)(2), and § 1367(a).

**Response:** The United States admits that jurisdiction is conferred upon this Court pursuant to the Federal Tort Claims Act (FTCA) 28 USC §1346(b) and 28 U.S.C. § 1367(a). The United States admits that venue is proper pursuant to 28 U.S.C. § 1402(b). The United States denies the remaining allegations of paragraph 13.

14. **Complaint:** That at or about 13:29 on December 1, 2016, and for some time prior and subsequent thereto, Plaintiff JONES and her Baby ALAYNA, while *in utero* and thereafter, as a minor, did receive medical care treatment, and attention from various employees and/or agents, whether actual or apparent, of the Defendant HOSPITAL and/or Defendant USA, including but not limited to Erika Castro, M.D.; Rebecca Dehoek, M.D.; Sveva Brown, M.D.; Morgan Madison, M.D., Lizabeth Rodriguez; Irina Lozovatskaya, R.N.; Karen Gillett, R.N.;

7

Briana Johnson, R.N.; Jennifer Joseph, R.N.; Lillie Smith-Beacham, R.N.; Joy Nfarooqui Staffid; and/or Kimberley Bruno, R.N.; and other medical personnel.

> **Response:** The United States admits that on or about December 1-2, 2016, Drs. DeHoek, Brown, and Madison provided medical care treatment and attention to Jones and Alayna, while *in utero*, at the Hospital. The United States denies that Dr. Castro provided direct medical care treatment to Jones and Alayna on December 1-2, 2016. The remaining allegations in paragraph 14 address defendants other than the United States, and therefore require no response.

15. **Complaint:** That prior to December 1, 2016, Plaintiff JONES was seen for prenatal care on at least three (3) occasions where assessments for her pregnancy and fetal well-being were performed. From the available medical records, Plaintiff JONES' prenatal care was unremarkable.

> **Response:** The United States admits that Jones was seen for prenatal care at PCC on at least three occasions prior to December 1, 2016. The United States lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 15; accordingly, they are denied.

16. **Complaint:** That on or about December 1, 2016, Plaintiff JONES was seen in Triage at or about 11:59 initially to rule out labor, and was ordered to receive continuous electronic fetal heart monitoring, and was thereafter admitted to Labor and Delivery for induction of labor.

> **Response:** Admit.

17. **Complaint:** That at the time of admission, Plaintiff JONES was 40 years old, gravida 11, para 9, at 38 5/7 weeks, and presented with possible loss of fluid, visual changes and

seeing spots, positive frontal headache, and tingling sensation of bilateral hands..

> **Response:**    Admit.

18.    **Complaint:**    That Plaintiff JONES' initial nonstress test indicated the following: fetal heart rate 130s bpm, moderate variability, positive accelerations, no decelerations, irregular contractions, and negative ferning and pooling.

> **Response:**    Admit.

19.    **Complaint:**    That the presentation was consistent with a healthy and neurologically intact unborn baby.

> **Response:**    Deny.

20.    **Complaint:**    That the medical records indicate that at or about 13:45 on December 1, 2016, a vaginal exam was performed and indicated the following: 1 cm / 10% effaced / -4 station.  At this time, the records also indicate a non-tender abdomen and reflexes +2.

> **Response:**    Admit.

21.    **Complaint:**    That Plaintiff JONES was induced for diagnosis of severe preeclampsia.  She was provided labetalol and Magnesium sulfate.

> **Response:**    The United States admits that records from the Hospital appear to support the allegation that Jones' labor was induced, that she was diagnosed with severe preeclampsia, and that she was provided labetalol and Magnesium sulfate.  The United States lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 21; accordingly, they are denied.

22.    **Complaint:** Based upon Plaintiff JONES' presentation, including but not limited to the following risk factors: advanced maternal age, extreme grand parity, severe preeclampsia with severe features, possible gestational diabetes, limited prenatal care, and obesity, Plaintiff

JONES was a high-risk patient who needed to be assessed and/or managed by specialists including maternal fetal medicine specialist(s) and/or obstetrician-gynecologist(s) during her admission. Instead, Plaintiff JONES' labor was managed exclusively by the agents and/or employees of Defendant HOSPITAL and/or Defendant USA, including family medicine physicians, who do not have the specialized training, education, and experience to appropriately care for a patient such as Plaintiff JONES.

> **Response:** Deny.

23. **Complaint:** The physician orders indicate that Plaintiff JONES was to be placed on continuous electronic fetal heart monitoring, which tracing started at or about 11:59 on December 1, 2016, through at or about 00:32 December 2, 2016.

> **Response:** Admit.

24. **Complaint:** Between approximately 11:59 on December 1, 2016 and 00:32 on December 2, 2016, despite the order for continuous monitoring, there are hours of tracing that are illegible or otherwise unreadable as to the status of the fetal heart rate and/or the contractions. By way of example but without limitation:

> - At or about 17:07 (on 12/1/2016) the nurse comment includes that the fetal heart rate is not tracing;
> - At or about 18:08 (on 12/1/2016) the records indicate difficulty getting FHR;
> - At or about 18:56 (on 12/1/2016) irritability of the contractions was noted, which is a known indicator of potential irritation from bleeding which can presage abruption;
> - At or about 19:58 (on 12/1/2016) the records indicate "R.N. at bedside, attempting to get heart tones";
> - At or about 20:13 (on 12/1/2016) the records indicate "notified MCH of difficulty obtaining heart tones,' will assess fetal position";
> - At or about 21:01 (on 12/1/2016) the records indicate the presence of minimal variability;
> - At or about 21:15 (on 12/1/2016) there is poor pick-up or detection of the fetal heart, and the medical records indicate "Dilatation: 2.0, Effacement: 50, Station: -3."

10

At 21:30 (on 12/1/20 16) the records indicate the presence of minimal variability;

- From approximately 21:45 - 22:15 (on 12/1/2016) there is poor pickup or detection of the fetal heart rate;

- At 22:15 (on 12/1/2016) the records indicate the presence of minimal variability;

- From approximately 22:40 (on 12/1/2016) to 00:33 (on 12/2/2016) there is poor pick-up or detection of the fetal heart rate;

- At 00:10 (on 12/2/2016) the records indicate "attempting to get fetal heart tones at this time";

- At 00:13 (on 12/2/2016) the records indicate "RN at bedside, Provider at bedside ... attempting to get fetal heart tones at this time";

- At 00:19 (on 12/2/2016) the records indicate "attempting to obtain fetal heart tones per external monitor ...";

- At 00:26 the medical records indicate "pulse ox placed on mom to verify maternal heart rate."

**Response:** The United States lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 24; accordingly, they are denied.

25. **Complaint:** During the admission on December 1-2, 2016, prior to the delivery of Baby ALAYNA, there is an absence of reasonable nursing and/or medical charting, documentation, or recording such that the patients were not being monitored as ordered and required and/or the charting, documentation, recording was not performed as required and/or the charting, documentation, and/or recording was created but has since been lost, is missing, or was destroyed.

**Response:** Deny.

26. **Complaint:** At or about 00:13 a.m. on December 2, 2016, upon rupture of membranes, the records indicate that Plaintiff JONES was having severe abdominal pain, SVE (sterile vaginal exam) was reported at 7-8cm dilation, and at this point the primary care nurse was unable to obtain the fetal heart rate on the monitor and fetal scalp electrode was placed evidencing a fetal heart rate in the 60s bpm.

**Response:** The United States admits that copies of the Hospital's records appear to

11

support the allegations of paragraph 26; however, the United States otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 26; accordingly, they are denied.

27.   **Complaint:**   At or about 00:32, the records indicate "consent for surgery done by Dr. Brown and Dr. Madison, verified by Briana Johnson RN."

**Response:**   Admit.

28.   **Complaint:**   The records indicate that a crash c-section was performed with delivery of Baby ALAYNA at or about 00:49 on December 2, 2016.

**Response:**   The United States admits that a crash Cesarean section was performed at or about 00:49 on December 2, 2016, but denies the remaining allegations of paragraph 28.

29.   **Complaint:**   The medical records indicate "baby Girl Jones [Baby ALAYNA] delivered 12/2/16 @ 00:49 by emergency c/s secondary to fetal bradycardia/decels. Maternal history 40 y/o G11P90010 scant PNC, presented to triage [with] possible SROM, headache/vision changes, elevated B/P, accu √ 66, admitted for IOL [secondary to] severe pre-eclampsia. Started on mag sulfate. Given stadol for pain: Fetal HR persistently 60s, so stat C/S performed. ROM officially 00:13. Baby delivered [with] no spontaneous movement, cyanotic, no resp effort. Started PPV immediately and HR improved to > 100. Still no resp effort although color improved, no movement. Intubated at 10 min of life [with] 3.5 ETT, taped @ 9cm..."

**Response:**   Admit.

30.   **Complaint:**   The Progress Record from Dr. Rodriguez, a resident-physician, at or about December 2, 2016 at 01:00a.m., "Baby Girl Jones [Baby ALAYNA] born to a 40y/o Gl1P90010 at 38+6 based on 14 wk US. Mom had hx of GDM during her last two pregnancies.

Scant prenatal care with only 3 visits. Elevated 1 hr GTT and never completed 3hr GTT. Mom presented to triage with possible SROM, frontal headache tingling sensation of bilateral hands, and vision changes. No p.o. intake for 1 day. SROM was ruled out. Mom found to have an Accucheck of 66, BP initially @ l30s but progressively increase to severe range SBP 160-170s. Mom admitted for IOL for pre-eclampsia w/ severe features. Started on mag at 6pm; last level 3.2. Continue to contracting q 7-10 minutes and officially SROM at 00:13, clear fluid, cervical check 5cm / 70% / -2station. Stadol given for pain control. Attempt at placing fetal scalp monitor showed a persistent heart rate 60s, prior to rupture of membranes. HR 120s-130s. Emergent c-section for possible placenta abruption. Apgars 1,5,8. After stimulation HR continued at 50-60bpm, 02 at 100% was provided resulting in improvement of HR to > 100..."

   **Response:** The United States admits that copies of the Hospital's records appear to support the allegation quoting a progress record that was written at or about December 2, 2016 at 01:00 a.m.; however, the United States otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 30; accordingly, they are denied.

  31. **Complaint:** The records indicate that cord blood samples were drawn and analyzed, yielding the following blood gas values: umbilical venous pH 6.63 and umbilical arterial pH 6.52. The records also indicate that follow-up blood gases were analyzed at or about 40 minutes of life, which indicated a pH of 7.14 and base excess of-20.

   **Response:** The United States admits that copies of the Hospital's records appear to support the allegations of paragraph 31; however, the United States otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 31; accordingly, they are denied.

32.    **Complaint:**   Plaintiff JONES needed and was provided packed red blood cells and a transfusion for intraoperative hemorrhage. She was given a diagnosis of premature separation of placenta with Disseminated Intravascular Coagulation ("D.I.C.").

**Response:**    The United States admits that copies of the Hospital's records appear to support the allegations of paragraph 32; however, the United States otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 32; accordingly, they are denied.

33.    **Complaint:**  Following birth, Baby ALAYNA was transported to Lurie Children's Hospital and was treated with hypothermia whole-body cooling for severe encephalopathy, was given a diagnosis of Hypoxic Ischemic Encephalopathy, was given phenobarbital, had both clinical seizures as confirmed on EEG, and was administered an MRI that was interpreted as abnormal with marked diffusion consistent with severe acute intrapartum Hypoxic Ischemic Encephalopathy.

**Response:**    The United States admits that copies of Alayna's medical records appear to support the allegation that Alayna was transported to Lurie's Children Hospital, was treated with hypothermia whole-body cooling, was given a diagnosis of hypoxic-ischemic encephalopathy (HIE), was given phenobarbital, had clinical seizures, and was administered an MRI that was interpreted as marked diffusion consistent with severe HIE.  The United States denies the remaining allegations of paragraph 33.

34.    **Complaint:**  Currently, Baby ALAYNA's condition includes a diagnosis of Hypoxic Ischemic Encephalopathy, motoric and mental disabilities, seizures, the need for anti-seizure medication, and, on information and belief, both currently and in the future requires extensive care, treatment and therapies.

**Response:** The United States admits that copies of Alayna's medical records appear to support the allegation that Alayna was diagnosed with HIE and seizures; however, the United States otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 34; accordingly, they are denied.

35. **Complaint:** Baby ALAYNA's severe injuries are permanent, and will require extensive care and treatment into the future. She is, on information and belief, unlikely to live independently or be competitively employed. She is at risk for Cerebral Palsy.

**Response:** The United States lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 35; accordingly, they are denied.

## COUNT I
### (Medical Negligence- Defendant USA)

Plaintiffs DEVON BANK, as the Guardian of the Estate of ALAYNA HIKE, a minor, and RHONDA JONES, individually, re-allege and incorporate herein by reference the above paragraphs of this Complaint as if fully re-stated herein.

36. **Complaint:** That on or about December 1-2, 2016, and for some time prior and subsequent thereto, Plaintiff JONES and Baby ALAYNA, were admitted to Defendant HOSPITAL and were within the care, custody, and control of Defendant USA by and through its various agents including but not limited to Erika Castro, M.D.; Rebecca Dehoek, M.D.; Sveva Brown, M.D.; Morgan Madison, M.D., jointly and/or individually, acting within the course and scope of their agency.

**Response:** The United States admits that during on or about December 1-2, 2016, during the time that Plaintiffs were admitted to the Hospital, Drs. DeHoek, Brown, and Madison provided care and treatment to Plaintiffs and were acting within the scope of their

15

employment at PCC. The United States denies the remaining allegations of paragraph 36.

37. **Complaint:** That on or about December 1, 2016 and thereafter, and at all times relevant herein, Defendant USA, by and through its agents, including but not limited to Erika Castro, M.D.; Rebecca Dehoek, M.D.; Sveva Brown, M.D.; Morgan Madison, M.D., did undertake the care of Baby ALAYNA and Plaintiff JONES during the course of the prenatal, intrapartum, labor and delivery, neonatal, and/or post-partum periods..

      **Response:** The United States admits that during on or about December 1-2, 2016, during the time that Plaintiffs were admitted to the Hospital, Drs. DeHoek, Brown, and Madison provided care and treatment to Plaintiffs, including prenatal, intrapartum, labor and delivery, neonatal, and/or postpartum care and treatment. The United States denies the remaining allegations of paragraph 37.

38. **Complaint:** That on or about December 1, 2016, and at all times relevant herein, it then and there became the duty of the Defendant USA, by and through its agents, including but not limited to Erika Castro, M.D.; Rebecca Dehoek, M.D.; Sveva Brown, M.D.; Morgan Madison, M.D., to render healthcare services consistent with the medical requirements of the patients Baby ALAYNA and Plaintiff JONES, and to possess and apply that degree of care, treatment, and skill commonly exercised by other health care professionals in the same or similar circumstances and to avoid harm.

      **Response:** The United States admits that Drs. Castro, DeHoek, Brown, and Madison were required to comply with applicable law. The United States denies any remaining allegations in paragraph 38.

39. **Complaint:** After assuming the care and treatment of Baby ALAYNA and Plaintiff JONES, Defendant USA, by and through its agents including not limited to Erika Castro,

M.D.; Rebecca Dehoek, M.D.; Sveva Brown, M.D.; Morgan Madison, M.D., deviated from the accepted standard of care and was then and there guilty of one or more of the following negligent acts and/or omissions:

a. Failure to perform a timely cesarean section which would have prevented injury to Baby ALAYNA;

b. Failure to appreciate and identify the patient's high-risk status and timely and appropriately treat the patient's high-risk factors;

c. Failure to obtain an appropriate consultation of an appropriate medical specialist competent and capable of managing the patient's high-risk conditions including consultation with a maternal fetal medicine specialist and/or an obstetrician/gynecologist;

d. Failure to appreciate the presence of multiple high-risk factors that required a higher level of monitoring and intervention, which was not provided and led to fetal compromise;

e. Failure to assess the intrapartum fetal status including but not limited to the fetal heart monitor tracing and contraction monitor and changes thereof which were indicative of deterioration of the fetal status including but not limited to consistent with hypoxia and/or ischemia which necessitated interventions to correct and should said interventions fail to improve the condition, failure to deliver earlier;

f. Failure to follow physician orders including but not limited to continuously electronically monitor the fetal heart rate during labor;

g. Failure to monitor and record the fetal heart rate throughout labor which was, for a large portion of the admission before delivery, uninterpretable, unreadable, and/or not monitored;

h. Failure to order and/or place internal monitoring devices such as a fetal scalp electrode (FSE) and intrauterine pressure catheter (IUPC) to properly monitor the fetal heartrate and uterine activity;

i. Failure to keep proper medical and/or nursing documentation including but not limited to progress notes, physician notes, nursing notes, flowsheet notes, vital signs, labor assessments, fetal heart rate assessments, uterine assessments, and/or patient assessments;

j. Failure to assess the intrapartum fetal status including but not limited to the fetal heart monitor tracing and contraction monitor and changes thereof which were indicative of irritability of the uterus consistent with bleeding and/or abruption

17

which necessitated interventions to correct and should said interventions fail to improve the condition, failure to deliver earlier;

k. Failure on the part of the agents, servants, and/or employees of the hospital including nurses to inform the physicians of the fetal status and to advocate for· earlier delivery;

1. Failure to provide adequate informed consent regarding the nature of the risks to the unborn baby of brain injury to a fetus deprived of oxygen during labor, and failure to react appropriately thereto including but not limited to earlier delivery;

m. Failure to adequately inform and/or perform a Cesarean section delivery in order to avoid intrapartum neurologic injury, including hypoxic ischemic injury;

n. Failure to perform a timely cesarean section which would have prevented injury to Baby ALAYNA;

o. Failure to properly manage Plaintiff JONES, labor including but not limited to failure to perform earlier delivery;

p. Failure to perform appropriate intrapartum fetal evaluations and/or interpret abnormal signs and/or symptoms and intervene earlier;

q. Failure to utilize the chain of command when notification of concerning signs and symptoms were not immediately responded to; in other words, the health care provider(s) should have called for and obtained physician(s) to treat the patients, prepare for timely surgery, and expeditiously deliver the baby rather than to allow the baby to continue to deteriorate at a time the health care provider(s) knew or should have known that to fail to intervene with earlier delivery would substantially increase the risk of harm to the baby;

r. Failure to promulgate, implement, and maintain, reasonable and appropriate policies and procedures;

s. Failure to retain a full, complete, and legible copy of the medical records;

t. Failure to maintain and provide proper and adequate documentation including but not limited to nursing notes~ triage notes, plan of care regarding notification of physicians, nurses and staff for assessment and treatment; and

u. Any other breaches of the standard of care revealed during discovery in this matter.

      **Response:**   Deny.

40.   **Complaint:**   That a reasonably prudent health care provider under the same or

similar conditions would not have committed the aforementioned negligent acts and/or omissions.

    **Response:**  Deny.

  41.  **Complaint:**  That as a direct and proximate result of one or more of the aforesaid acts of negligence, Baby ALAYNA did sustain serious and permanent injuries (including severe Hypoxic Ischemic Encephalopathy and severe brain injuries, seizures, and mental and motoric deficits).

    **Response:**  Deny.

  42.  **Complaint:**  That as a direct and proximate result of one or more of the aforesaid acts of negligence, the PLAINTIFFS have suffered great pain, suffering, disability and will in the future continue to endure such pain, psychological, neurological, and emotional injuries, and will incur large medical expenses.

    **Response:**  Deny.

  43.  **Complaint:**  That as a direct and proximate result of one or more of the aforesaid acts of negligence, the PLAINTIFFS did sustain other pecuniary loss and other expenses and damages and will in the future incur other pecuniary loss and expense.

    **Response:**  Deny.

  44.  **Complaint:**  That as a direct and proximate result of one or more of the aforesaid acts of negligence, the PLAINTIFFS have incurred, and will continue to incur, medical and other expenses for the extraordinary needs of Baby ALAYNA, for which they claim compensation herein.

    **Response:**  Deny.

  45.  **Complaint:**  PLAINTIFFS attach the Affidavit of their attorney, pursuant to the provisions of 735 ILCS 5/2-622(a)(2), verifying that this action has not previously been

voluntarily dismissed and that the Plaintiffs have been able to obtain a consultation required by 735 ILCS 5/2-622(a)(l) as <u>Exhibit A</u>.  The corresponding report of qualified physician is attached hereto as <u>Exhibit B</u>.

   **Response:** The United States admits that plaintiffs' attorney has obtained a consultation as required by 735 Ill. Comp. Stat. 5/2-622 and that an Affidavit and Health Care Report to that effect are attached to plaintiffs' complaint, but denies the allegations contained therein.

**COUNT II**
**(Medical Negligence- Defendant HOSPITAL)**

  Count II is not directed to the United States, thus no response from the United States is required.

**JURY DEMAND**

  Plaintiffs, DEVON BANK, as the Guardian of the Estate of ALAYNA HIKE, a minor, and RHONDA JONES, individually, hereby demand a trial by jury.

   **Response:** Plaintiffs are not entitled to a trial by jury with regard to their counts directed against the United States.

20

WHEREFORE, the United States requests that this case be dismissed with costs and that the court award it such further relief as may be appropriate.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
Acting United States Attorney

By: s/ Megan E. Donohue
    MEGAN E. DONOHUE
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 353-1877
    megan.donohue@usdoj.gov